## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**UNITED STATES OF AMERICA,**

**v.**                                          **Case No. 3:06cr66/LC/CJK**
                                                   **3:09cv28/LC/CJK**

**DAVID JOHNSON,**
      **Defendant**.

---

## REPORT AND RECOMMENDATION

This matter is before the court upon defendant's motion to vacate, set aside, or correct sentence (doc. 296), filed pursuant to 28 U.S.C. § 2255. The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and NORTHERN DISTRICT OF FLORIDA LOCAL RULE 72.2(B). Having conducted a careful review of the record and the arguments presented, the undersigned concludes that the motion should be denied.

### BACKGROUND AND PROCEDURAL HISTORY

The defendant, David D. Johnson, and five coconspirators were charged with conspiracy to possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base (Count I), in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii), 841(b)(1)(A)(iii), and 846. (Doc. 93, 1-2) Defendant and two of the named coconspirators were also charged with possession of a firearm in furtherance of a drug trafficking offense (Count II), in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. 93, 2) Prior to trial, the government filed an enhancement information, alleging two prior felony drug convictions, from September 2004 and January 2006. The

government advised that it intended to pursue enhanced penalties pursuant to 21 U.S.C. §§ 841 and 851.[1]  (Doc. 106)  Defendant objected to the enhancement information, asserting that the conduct underlying the prior convictions was merely part of the instant conspiracy offense.  After a two-day trial, a jury convicted defendant as charged and the court sentenced him to a statutory mandatory minimum term of life imprisonment on Count I, and a consecutive term of 240 months imprisonment on Count II.

At jury selection, the district judge articulated the need to select 14 jurors who would fairly and impartially try the issues presented, based solely upon the evidence presented at trial and without regard for outside factors.  (Doc. 239, 2-6)  Having introduced the parties, attorneys, and the government's agent, and explained the charges, the court questioned the prospective jurors as to any strong feelings about drugs that might compromise their fairness or impartiality.  Sara Barnes, a female on the panel who had once served on a grand jury, responded that her nephew and close

---

[1] Section 841(b)(1)(A) provides for a mandatory term of life imprisonment where the government can establish two or more prior convictions for a felony drug offense:

> If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence.

Section 851(a)(1) requires the government to file an additional information when seeking to establish prior convictions:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

friend had been involved with drugs, and that she had heard many drug cases during her grand jury service. (Doc. 239, 27-28) The court explained to Ms. Barnes the function of a grand jury, which determines merely whether "there appears to be enough evidence to warrant having a trial . . . ." (Doc. 239, 28) The court then asked the prospective juror whether she was aware that some defendants indicted by a grand jury are found not guilty and that the government sometimes dismisses grand jury charges for lack of evidence. Ms. Barnes replied, "No. Most of them were guilty that I remember." Ms. Barnes then indicated she did not know whether she could be fair to the defendant, and the court announced that it was releasing her for cause. (Doc. 239, 28-29, 33)

After the court finished questioning the prospective jurors, defense counsel moved to strike the jury because of the absence of African Americans and racial minorities from the pool. Defense counsel argued that the racial composition of the jury pool would not allow for a fair trial or a jury of defendant's peers. (Doc. 239, 33-34) The court denied the motion, observing that the jury pool had been assembled in accordance with a plan approved by the U.S. Court of Appeals for the Eleventh Circuit ("Eleventh Circuit"), which guarantees every voter in the district an equal opportunity to be selected. (Doc. 239, 34) The court invited defense counsel to show that such plan had not been followed, but counsel offered no argument. Defense counsel used all ten of his peremptory challenges as the first ten jurors were seated. (Doc. 239, 36-39) The final two jurors were seated without objection, and two alternates were selected after a challenge from each party. (Doc. 239, 39)

At trial, the government established defendant's participation in a cocaine distribution network operating in Santa Rosa County, Florida.[2] (Doc. 251, 17; PSR ¶¶ 8-9)  Sharon Dixon operated the drug ring, selling drugs to defendant, also known as "Day-Day," Mr. Johnson's brother, Frederick, and his cousin, Alonzo.  Defendant also involved his girlfriend, a juvenile named Ashley Honaker, and Valentine Vasser in the distribution of drugs.  Alonzo Johnson testified that defendant sold drugs, and authenticated a video he had taken which depicted defendant counting money and selling drugs from an area known as "the hole."  Alonzo also admitted that Dixon was the main drug supply source for himself and defendant.  (Doc. 251, 34-37; PSR ¶ 151)

At his request, defendant met with three drug agents following his May 2006 arrest.  (Doc. 251, 58-59)  Defendant asserted that he had been involved in the sale of crack cocaine for approximately two years in and around Milton, Florida.  (Doc. 251, 59)  Mr. Johnson stated that he sold crack cocaine from the street in a highly purified form known as "drop," and that he obtained the cocaine from Dixon, Vasser, and Rafael Goodwin, another coconspirator.  (Doc. 251, 59)  Defendant also reported a supply source in Fort Walton, Florida.  (Doc. 251, 59; PSR ¶ 117)  Explaining that he often traveled to the "buys" with his brother, Frederick, defendant said he purchased between $2,000 and $3,000 worth of cocaine per week and usually four ounces at a time.  Each four ounce purchase exceeded 100 grams of crack cocaine.  (Doc. 251, 59-60)

---

[2] References to the presentence investigation report will be by "PSR" followed by the paragraph number.

Despite being in custody, defendant continued his involvement in the drug network. (Doc. 251, 60)  Mr. Johnson made frequent calls—no fewer than 100—to Ashley in which the two discussed firearms and the drug distribution business.  More specifically, defendant counseled Ashley about obtaining powder cocaine from his coconspirators, converting it to cocaine base, and selling the crack. (Doc. 251, 54, 60-61)  Deputy Blake Weekley, of the Santa Rosa County Sheriff's Office, testified that he listened to many of these telephone calls, which often referenced Sharon Dixon and Frederick Johnson. (Doc. 251, 64)  Weekley recounted that after warrants were issued, he searched defendant's home, finding crack on the kitchen table, plastic bags consistent with drug packaging, baking soda and a spoon with crack residue, and $8,000 cash.  Authorities also found pictures of Ashley with money and a bag with defendant's clothes, identification, crack, and a digital scale.

During Weekley's testimony, the government asked, "on the day you served the warrant, was there also a juvenile [C]aucasian female present?"  Defense counsel did not object to the characterization.  Weekley responded that defendant's girlfriend, Ashley, had been present.  In his testimony, Deputy Sheriff Chris Williams confirmed that a white female named Ashley was present during the search.

Authorities also found a red Jaguar registered to the same address defendant listed as his residence, which was a trailer located at "the hole."  The Jaguar matched the car seen in the video Alonzo had taken.  Authorities could not, however, identify who owned the car.  Inside the Jaguar, authorities found money, drugs, and several firearms, including a short-barreled shotgun.  Near the trailer at "the hole," police also found a gun box and a Chevy containing drugs and a firearm.  The Chevy belonged

to Alonzo, but agents could not determine who used it.  The Jaguar, which Frederick used, was registered to an unidentified female.

Deputy Scott Haines, also of the Santa Rosa County Sheriff's Office, testified that he conducted a traffic stop of Frederick Johnson's car, during which officers found a handgun, money, a ledger, and bank receipts.  Officers also recovered a note referring to jail and Ashley.  In the note, signed by "Day-Day," the author discussed bonding out of jail and making $50,000 in profits before he had to "step in court again."  (Doc. 251, 71-73)  According to an investigation conducted by the Florida Department of Revenue, defendant did not have any reported source of legitimate income from January 2005 until his arrest in May 2006.  (Doc. 251, 119)

Through Special Agent Christopher Rigoni (Florida Department of Law Enforcement), the government also introduced an intercepted telephone call from Sharon Dixon to an unidentified woman using defendant's phone.  During the call, a person speaking in the background, identified by Rigoni as the defendant, was heard threatening Dixon while racking the slide of, and firing, a semiautomatic handgun.  (Doc. 251, 76-80; PSR ¶ 153)  On cross-examination, Rigoni stated that he was familiar with defendant's voice because he had listened to many of Mr. Johnson's recorded jail telephone calls.  Furthermore, Rigoni pointed out that Dixon had called the telephone to which defendant subscribed and that on three occasions a party to the conversation called the background speaker by the name "David."  (Doc. 251, 81-83)  Officers monitoring the call, fearing danger to the community, ended the wiretap investigation and began serving warrants for search and arrest.  (Doc. 251, 80)

After the government rested its case-in-chief, the court denied defendant's motion for judgment of acquittal.  Defendant then presented the testimony of his

sister, Linda, who stated that defendant did not live at "the hole," but rather with Ashley.  "The hole," according to Linda, was a plot of land with three mobile homes located on the site, all of which used the same address.  Linda also testified that defendant drove a Cadillac, Frederick drove a Jaguar, and Alonzo drove a Chevy.

Defendant rested his case following Linda's testimony, and the government called coconspirator Tabitha Dixon, Sharon Dixon's girlfriend, as a rebuttal witness. Dixon testified further regarding defendant's drug distribution activities with Frederick, Alonzo, and Ashley.  (Doc. 252, 18-22, 35; PSR ¶ 154)  Tabitha, who knew defendant through his dealings with Sharon, witnessed defendant buy drugs from Sharon Dixon between eight and ten times.  Sharon would drive to "the hole," where defendant and the others would approach the window of the car and purchase drugs from Sharon and Tabitha.  Tabitha also knew Ashley Honaker, who, after defendant's arrest, told Tabitha that defendant had taught her how to convert powder cocaine to crack cocaine for sale and that she was trying to sell drugs.  (Doc. 252, 35; PSR ¶ 30)

After the government rested its case, defendant renewed his motion for judgment of acquittal, which the court again denied.  The jury convicted defendant on both counts as charged.  (Docs. 173, 176)  The probation officer prepared a presentence investigation report, assigning a base offense level of 38 for Count I, with a two-level enhancement under U.S. SENTENCING GUIDELINES MANUAL § 3B1.4, because defendant used a minor to commit the offenses, for a total offense level of 40.  Count II was not grouped with Count I, because Count II carried a mandatory minimum ten-year consecutive sentence, as the firearm involved was a short-barreled shotgun.  *See* 18 U.S.C. § 924(c)(1)(B).  In determining defendant's criminal history

category, the probation officer listed numerous prior convictions and juvenile adjudications, including the September 2004 conviction for possession with intent to sell a controlled substance, and two January 2006 convictions for possession and possession with intent to sell a controlled substance. As a result of the convictions, defendant's criminal history category was V. The probation officer also noted that many of the prior convictions involved drugs and weapons, and that additional charges involving drugs and weapons were pending.

With a total offense level of 40 and a criminal history of V, the guidelines range was 360 months to life imprisonment. *See* 21 U.S.C. §§ 841, 851; U.S. SENTENCING GUIDELINES MANUAL § 5G1.1(b). Regarding the firearm conviction, the probation officer noted that defendant could be heard firing a round into the phone during the intercepted telephone call from Sharon Dixon. Under 18 U.S.C. § 924(c), defendant faced an enhanced mandatory minimum sentence of ten years imprisonment, because the offense involved a short-barreled firearm.

Defendant objected to the presentence investigation report, asserting, *inter alia*, that the convictions relied upon to enhance his sentence were part of the overall conspiracy in the instant case and should not be counted as prior convictions for purposes of enhancement. Defendant further challenged the enhancement for the § 924(c) offense, contending the government offered no evidence that the firearm was used in furtherance of the offense. Moreover, defendant argued that the type of firearm had not been charged in the indictment.

At sentencing, defendant reiterated his objection to the enhanced penalties for the type of weapon involved, citing *United States v. Booker*, 543 U.S. 220 (2005), and arguing that no facts were proven to the jury. The court overruled the objection,

explaining that it could exercise its discretion to impose a ten-year sentence even if the mandatory minimum was five years instead of ten.  Defendant objected to the § 851 enhancement based on prior convictions, asserting that the convictions were sufficiently related to the instant offenses, because they involved the same case, same planning and execution, and same locale.   Concluding that the presentence investigation report was accurate and that there was a third conviction upon which the government could rely in seeking the § 851 enhancement, the court overruled the objection.

Notwithstanding the aforementioned objections, defendant agreed at sentencing that he should be held accountable for 2,754.17 grams of cocaine base.  (PSR ¶ 247) Defendant acknowledged convictions for three prior drug offenses, but argued against the imposition of a mandatory life sentence.  (Doc. 236, 5-15)  Nevertheless, the District Court sentenced defendant to a statutory mandatory minimum term of life imprisonment on Count I, and a consecutive term of 240 months imprisonment on Count II.  (Docs. 220; 236, 20-21)  The court announced that it had considered the sentencing factors set forth in 18 U.S.C. § 3553(a), that the sentence was mandated by statute, that the sentence was sufficient, and that "no greater sentence is necessary."  (Doc. 236, 20-21)  Defendant objected to the sentence as unfair.

On direct appeal, counsel raised one claim of trial error and two claims of sentencing error.  Defendant argued (1) that the government's repeated introduction of testimony concerning a white juvenile female during the trial of a black male, in front of an all-white jury, was irrelevant and prejudicial; (2) that the sentence imposed was unreasonable, and that the court failed to consider all the evidence when it imposed an upward variance from the ten-year mandatory minimum sentence on the

firearm count; and (3) that the court violated his right to due process of law and the provisions of § 3553(a) by failing to address the enumerated statutory factors and find that the sentence imposed was "not greater than necessary."  By mandate issued August 10, 2007, the Eleventh Circuit affirmed defendant's convictions and sentence. (Doc. 257)  On January 17, 2008, the Supreme Court denied defendant's petition for writ of certiorari.  (Doc. 266)

<u>DEFENDANT'S CLAIMS</u>

Pursuant to 28 U.S.C. § 2255, defendant timely filed the instant motion to vacate, set aside, or correct sentence (doc. 296), asserting thirty-six grounds on which he believes he is being held in violation of the Constitution, laws, or treaties of the United States.  Defendant contends trial counsel rendered ineffective assistance by (1) allowing the government to refer repeatedly to an unnamed coconspirator, Ashley Honaker, as a juvenile white female rather than by her name; (2) allowing the government to refer repeatedly to Honaker as defendant's "girlfriend;" (3) failing to move for a mistrial on the grounds that the exchange between the trial court and prospective juror Barnes tainted the eventual jury; (4) failing to object to the sufficiency of the evidence; (5) failing to request additional peremptory challenges during jury selection; (6) failing to move for a continuance, because counsel was unprepared for trial; (7) failing to advise defendant that pleading guilty would substantially lower his sentence; (8) failing to point out that defendant did not teach Ashley how to "cook" cocaine base; (9) advising defendant not to testify on his own behalf; (10) failing to object to the two-point increase in base offense level for using a minor to further the criminal conspiracy; (11) failing to subpoena Fefi Salter and Frederick Johnson to testify on defendant's behalf; (12) failing to offer into evidence

various auto repair estimates, which, Mr. Johnson contends, tended to show that defendant did not own the Jaguar from which the short-barreled shotgun was recovered; (13) failing to highlight contradictions in the testimony of Deputy Weekley; (14) failing to object to the admission into evidence of pictures of Ashley Honaker; (15) failing to object during *voir dire* when the court asked prospective jurors whether they knew a Katura Wilson, rather than Katura Williams; (16) failing to object to false statements made during the government's closing argument; (17) failing to object to the admission into evidence of the short-barreled shotgun and failing to present the results of a relevant fingerprint examination; (18) failing to request a competency hearing; (19) failing to conduct a thorough pretrial investigation; (20) failing to request a jury instruction distinguishing the purchase and sale of drugs from a conspiracy to distribute; (21) failing to offer into evidence the grand jury testimony of Special Agent Claude Cosey; (22) failing to cross-examine Tabitha Dixon regarding the incident during which defendant allegedly threatened Sharon Dixon with a semiautomatic handgun; (23) failing to object to the government's use of the term "smokescreen" during closing argument; (24) attributing to defendant more drug weight than was set out in the presentence investigation report; and (25) failing to request a continuance to gather census data, which Mr. Johnson asserts counsel should have used to argue that the jury selection process systematically excluded African Americans, Hispanics, and younger jurors.

Defendant also alleges three instances of ineffective appellate assistance, asserting counsel performed deficiently by (1) failing to raise the sufficiency of the evidence; (2) falsely informing defendant that ineffective assistance claims cannot be raised on direct appeal; and (3) failing to verify defendant's address before sending

legal mail.  Finally, defendant cites several additional grounds in support of the motion to vacate: (1) Special Agent Cosey rendered false testimony to the grand jury; (2) the government did not carry its burden to establish a common agreement; (3) the government committed "various acts of misconduct," such as referring to Ashley Honaker as defendant's girlfriend; (4) the government, in seeking an enhanced sentence, relied on prior convictions that do not qualify as serious drug offenses under U.S. SENTENCING GUIDELINES MANUAL § 4B1.1; (5) the jury failed to make any specific finding as to the drug quantity attributed to defendant; (6) defendant was not provided an opportunity to enter a plea after the government dismissed all charges relating to powder cocaine; (7) the application of enhanced penalties under 21 U.S.C. §§ 841 and 851, absent warning that state criminal convictions could be used to enhance a federal sentence, violated defendant's substantial rights; and (8) the lack of representation of African Americans, Hispanics, and young persons on the grand and petit juries violated defendant's constitutional right to a trial by jury of his peers.

## ANALYSIS

As a preliminary matter, the court notes certain general rules applicable in § 2255 proceedings following direct appeals, as well as the distinction between review under § 2255 and direct appeal.  "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding."  *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development."  *Id.*  "A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal."

*McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001). "Further, a § 2255 movant cannot argue as the causal basis for his failure to advance an argument on direct appeal that the argument only became known to the movant due to subsequent developments in the law." *Castro v. United States*, 248 F. Supp. 2d 1170, 1174 (S.D. Fla. 2003) (citing *McCoy*, 266 F.3d at 1258).

Regarding the important difference between a § 2255 collateral challenge and direct review, "[i]t has long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *See United States v. Addonizio*, 442 U.S. 178, 184 (1979). Relief should be granted only if the challenged sentence resulted from "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *See Hill v. United States*, 368 U.S. 424, 428 (1962); *see also Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) ("Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'" (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981))).

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Second, the defendant must show that the deficient performance prejudiced the defense[,]" which "requires showing that

counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In applying *Strickland*, the court may dispose of an ineffective assistance of counsel claim if the defendant fails to carry his burden on either of the two prongs. *See* 466 U.S. at 697.

*Jury Selection*

In an effort to resolve defendant's claims in a coherent manner, the court will address related or similar grounds in tandem. Defendant raises four claims of ineffective assistance of trial counsel related to the selection of the jury in this case. Mr. Johnson claims counsel erred by failing to (1) move for a mistrial in light of the discussion between the court and prospective juror Barnes; (2) request additional strikes after using his ten peremptory challenges; (3) object to the court's misidentification of a potential defense witness, Katura Williams; and (4) move for a continuance to gather census data to show that the jury selection process systematically excluded African Americans, Hispanics, and younger jurors.

The exchange between the trial court and Ms. Barnes of which defendant complains was initiated when the court questioned the prospective jurors regarding any strong feelings about drugs that might compromise fairness or impartiality. Ms. Barnes, who had once served on a grand jury, responded that her nephew and close friend had been involved with drugs, and that she had heard many drug cases during her grand jury service. (Doc. 239, 27-28) Through her response, Barnes did exhibit a significant misunderstanding of the grand jury process, expressing her belief that "most" defendants indicted by a grand jury are guilty. (Doc. 239, 28-29) Accordingly, the court explained to Ms. Barnes, and the rest of the prospective panel, that the burden of proof of guilt at trial is heavier than that required for indictment,

and that not all defendants indicted are found guilty.  (Doc. 239, 28-29)  Nonetheless, the court expressed concern with Ms. Barnes' feelings and whether she could be impartial to the defendant.  (Doc. 239, 29)  After Ms. Barnes indicated she did not know whether she could be fair to the defendant, the court stopped questioning her. (Doc. 239, 29)  The court then enquired whether any other prospective juror held such views, and no one responded.  Ms. Barnes was ultimately struck and released for cause.  (Doc. 239, 28-29, 33)

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).   "Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."  *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).  "To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  *Id.* at 369-70.  Here, defendant fails even to show that the outcome would have been different but for counsel's failure to move for a mistrial.  Defendant does not articulate how the exchange between Barnes and the court "tainted" the eventual jury, which heard from the trial judge a clear enunciation of the presumption of innocence and the relative burdens of proof associated with grand jury and trial proceedings.  In the final analysis, Ms. Barnes, having been struck from the panel, did not participate in an adjudication of the charges.  Furthermore, no other juror expressed similar doubts as to their ability to be fair and impartial to defendant.  This claim of ineffective assistance must fail because

defendant cannot demonstrate that the *voir dire* discussion at issue rendered the result of the proceeding unfair or unreliable.  *See Lockhart*, 506 U.S. at 369.

Likewise, defendant failed to show deficient performance in counsel's failure to request additional peremptory strikes.  Pursuant to FEDERAL RULE OF CRIMINAL PROCEDURE 24(b)(2), a defendant charged with a crime punishable by imprisonment of more than one year has ten peremptory challenges during the jury selection process.  Defendant offers no legal authority to support the notion that the trial court must grant additional peremptory challenges merely because the ten provided for have been used.  Unable to verify the legal viability of such a proposition, the court concludes that defendant has failed to show that counsel's performance in this regard fell beyond "the wide range of reasonable professional assistance" contemplated by *Strickland*.  *See* 466 U.S. at 689.  Moreover, although noting that defense counsel used the allotted ten peremptory challenges as the first ten jurors were seated, defendant does not discuss how the selection of either of the final two jurors rendered the result of his trial unfair or unreliable.  Defendant, in other words, has failed to demonstrate under *Strickland* how the lack of additional strikes prejudiced the outcome of the proceeding.  *See Lockhart*, 506 U.S. at 369.

Defendant claims next that counsel rendered ineffective assistance by failing to object when the court mispronounced the name of a potential defense witness, Katura Williams.  According to defendant, the court misidentified this prospective witness as Katura Wilson.  Assuming *arguendo* Ms. Williams was mentioned at trial and appeared in the courtroom audience, as defendant now contends, Mr. Johnson cannot show that he was prejudiced in any constitutionally meaningful way by the court's mispronunciation.  Ms. Williams was never called to testify and defendant

declines to describe in even the most general terms Ms. Williams's importance in the context of the trial.  Rather, defendant merely speculates that one or more jurors could have been "prejudiced" by their knowledge of Williams, and that this prejudice was not revealed due to the court's nominal mispronunciation.  (Doc. 296, 23)  Relying only on the barest conjecture, defendant cannot show "a reasonable probability that but for this [allegedly] deficient performance, the result of his trial would have been different."  *See Carter v. United States*, 288 F. App'x 648, 650 (11th Cir. 2008).

In his fourth claim of ineffective assistance relating to jury selection, defendant asserts counsel erred by failing to move for a continuance after the court denied a motion to strike the jury for being "composed of a distinctive group that was particularly disadvantaged or unfair" to defendant.  (Doc. 296, 29-30)  Defendant is African American and counsel moved to strike the panel because there were no African Americans in the jury pool.  (Doc. 239, 33-34)  Defendant now claims a continuance would have allowed counsel to collect census data or cases in which such data was employed to show the jury selection process systematically excluded African Americans, Hispanics, and younger jurors.

Significantly, "[t]he burden is on defendant[] to make a prima facie showing of the existence of discrimination or exclusion of a distinct group from jury participation."  *United States v. Kuhn*, 441 F.2d 179, 181 (5th Cir. 1971).  Conspicuously absent from defendant's argument on this point is any factual support for the suggestion that this district's jury selection plan is constitutionally deficient.  In fact, the jury selection plan for the U.S. District Court for the Northern District of Florida has been upheld on multiple occasions.  *See, e.g.*, *id.* (holding that the district's jury selection plan "fully conforms to the guidelines prepared by the

Committee on the Operation of the Jury System and to the declared statutory policy of the United States to afford litigants the right to be tried by juries selected at random from a fair cross section of the community"); *United States v. Briggs*, 366 F. Supp. 1356, (N.D. Fla. 1973) (concluding that "the Plan is valid on its face as fully complying with statutory and constitutional requirements, such being determined both by this Court's own conclusion and the holdings of Fifth Circuit Court of Appeals"). Because defendant shows no likelihood of prevailing on this issue, counsel did not unreasonably falter by declining to move for a continuance to gather census data. Accordingly, relief on this ground is unavailable. *See Strickland*, 466 U.S. at 487-88 ("When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.").

*Ashley Honaker*

In grounds one and two, defendant claims trial counsel rendered ineffective assistance by allowing the government to refer to Ashley Honaker, an unnamed coconspirator, as a "juvenile white female" and as the defendant's "girlfriend." (Doc. 296, 3-7)  Defendant theorizes that such characterizations created racial prejudice against him.  Notably, appellate counsel argued without success that the government's repeated introduction of testimony concerning a white juvenile female during the trial of a black male, before an all-white jury, was irrelevant and prejudicial.  Appellate counsel surmised that the evidence created the "probability" that defendant was convicted based on prejudice.  (Doc. 257, 9)  The Eleventh Circuit disagreed, observing that the government made only two isolated comments in which Honaker

was noted to be a white juvenile.  (Doc. 257, 10)  Moreover, the appellate court recalled, the evidence against defendant was "overwhelming."

Though it is not at all clear that the government's remarks were racially inflammatory—and even less clear that the characterization of Ashley Honaker was not directly relevant—even a clearly improper appeal to race does not always undermine the fairness of a proceeding.  *See Willis v. Kemp*, 838 F.2d 1510, 1522-23 (11th Cir. 1988) (holding state trial court did not deprive habeas petitioner of due process or fair sentencing proceeding by refusing to grant mistrial after prosecutor asked petitioner during guilt phase of trial whether he had called victim a "honkey").  As the Eleventh Circuit observed, here the government referred to Honaker as a white juvenile on just two occasions, and neither her race nor her status as a minor were focused upon.  Having reviewed the trial transcript and the presentence investigation report, this court also agrees that the evidence against defendant was considerable.  Video showed defendant selling drugs, and wiretap communications detailed Mr. Johnson's conversations about drugs with Ms. Honaker.  Alonzo Johnson and Tabitha Dixon both testified that they had seen defendant selling drugs.  In statements to authorities, defendant went so far as to concede his involvement in the greater conspiracy and reveal his sources.  Further, authorities seized evidence from defendant and his home linking Mr. Johnson to drugs, drug distribution, and weapons.  In any event, the jury, which viewed photographs of Ms. Honaker admitted in evidence, would have known the juvenile's race even absent the subject remarks.  Defendant, in light of the foregoing evidence, cannot demonstrate "a reasonable probability that but for this [allegedly] deficient performance, the result of his trial would have been different."  *See Carter*, 288 F. App'x at 650.

*Suppression of Evidence*

Defendant asserts in ground four that counsel rendered ineffective assistance by failing to move for suppression of a letter seized from his brother, Frederick Johnson, intercepted telephone calls, and a video showing defendant and others handling drugs.  (Doc. 296, 8-12)  Generally speaking, defendant's arguments as to the inadmissibility of such evidence are unpersuasive.  Regarding the note seized from Frederick, defendant contends, *inter alia*, that the letter does not necessarily establish proof of a conspiracy to traffic in illegal drugs, that no language in the note specifically pertains to cocaine base, that the author and recipient are ambiguous, and that the absence of a date did not allow the government to establish that the alleged drug activity occurred during the course of the charged conspiracy.  Contrary to defendant's contentions, the content of the note, as read in open court by Deputy Haines, does permit the inference of defendant's involvement in a conspiracy to distribute narcotics:

> What's going down?  I got about 38 days until I can bond out of this motherfucker, and Ashy tripping.  She had about $8,000, she spent 5- of them with Sharon at that time, and ain't been right since.  She fell off decent.  As we speak, she got about $2,000 and about 3 ounces.  I just hope she catch up in these five weeks.  She should be straight because the average about 2-, 2-and-a-half thousand in profits a week.

(Doc. 251, 73)

Relevant evidence is such "'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"  *United States v. Fields*, 327 F. App'x 133, 135 (11th Cir. 2009) (quoting FED. R. EVID. 401).  All

relevant evidence is admissible, except as otherwise provided. *See id.* In other words, the FEDERAL RULES OF EVIDENCE do not require that evidence be conclusive of the fact at issue to be admissible. Defendant cannot establish the inadmissibility of the letter, for example, merely because it does not, standing alone, prove to the exclusion of a doubt that Mr. Johnson was guilty of conspiracy to distribute drugs. Likewise, defendant does not articulate any valid basis for suppression of the "intercepted jailhouse phone conversations," during which defendant counseled Ashley about obtaining powder cocaine from his coconspirators and converting it to crack, or the video authenticated by Alonzo Johnson, which showed defendant selling drugs from "the hole." A successful claim of ineffective assistance of counsel is predicated upon some error or deficiency in the representation. *See Brownlee v. Haley*, 306 F.3d 1043 (11th Cir. 2002) ("[T]he petitioner must first show that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment.'" (quoting *Strickland*, 466 U.S. at 687)). Because defendant does not identify any error or deficiency in counsel's representation, he cannot prevail on this claim of ineffective assistance.

*Preparation of Counsel*

In ground six, defendant alleges that defense counsel, Kafahni Nkrumah, was "unprepared for trial" and thus rendered ineffective assistance by failing to move for a continuance. (Doc. 296, 12) In particular, defendant focuses on counsel's failure to object to testimony and argument indicating that Mr. Johnson taught Ashley how to "cook" powdered cocaine into cocaine base. According to defendant, counsel did not have adequate time to review the "hundreds" of intercepted jailhouse phone calls, which, defendant argues, suggest Ashley learned how to "cook" cocaine from

someone other than defendant.  (Doc. 296, 13-14)  Defendant also points to the cross-examination of Alonzo Johnson as evidence of counsel's alleged unpreparedness. Referencing Alonzo's convictions for possession of cocaine with intent to distribute and possession of a concealed weapon, counsel mistakenly asserted that the witness was charged simultaneously with the subject offenses.  The same line of questioning indicates further that defense counsel did not interview Alonzo Johnson prior to trial. (Doc. 296, 14-15)

In analyzing this ground, the court emphasizes the well-established standard that "a defendant is not entitled to perfect, error-free counsel . . . ."  *See Birt v. Montgomery*, 709 F.2d 690, 705 (11th Cir. 1983); *see also Adams v. Wainwright*, 709 F.2d 1443, 1446 (11th Cir. 1983) ("Effective counsel . . . does not mean errorless counsel.").  Moreover, "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler v. United States*, 218 F.3d 1305, 1317 (11th Cir. 2000).  "[C]ounsel's conducting or not conducting an investigation need only be reasonable to fall within the wide range of competent assistance." *Id.* (citing *Strickland*, 466 U.S. at 691 (stating that counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary")).

Perhaps counsel could have objected when, for instance, the prosecution attributed to defendant more drugs than were found when Mr. Johnson was arrested in November 2005 and May 2006.  But defendant has not shown that the failure to object in this instance or others, or the failure to pursue an investigation of various telephone calls and witnesses, "worked to his 'actual and substantial disadvantage.'" *See Wainwright*, 709 F.2d at 1446 (quoting *Washington v. Strickland*, 693 F.2d 1243,

1262 (5th Cir. 1982)).  In the face of overwhelming evidence of guilt, this claim of ineffective assistance of counsel must fail.  *See Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

In ground eight, defendant focuses on counsel's failure to counter the government's assertion that Mr. Johnson taught Ashley Honaker how to "cook" cocaine base into crack cocaine.  (Doc. 296, 16-17)  In telephone calls recorded from the jailhouse after defendant's arrest, Ms. Honaker described to defendant her method of "cooking."[3]  In turn, defendant offered to teach Ms. Honaker how to "cook" once he was released from jail.  Ms. Honaker replied that Sharon Dixon had also offered to show her how to "cook."  (Doc. 296, 17)  According to defendant, counsel should have highlighted these exchanges in response to the prosecution's allegations that it was defendant who had taught Ms. Honaker how to "cook."  Counsel's failure to marshal the evidence in such a manner, defendant contends, provided for the eventual two-point increase in base offense level for using a minor to further the criminal conspiracy.

The government, however, did not rely solely on the "cooking" evidence to establish defendant's involvement of Ms. Honaker in the conspiracy.  Defendant, in narrowing his focus to the "cooking" issue, elides the now familiar testimony of Deputy Weekley, who reviewed the recorded telephone calls and stated at trial that the callers could be heard generally "discussing obtaining and selling . . . crack cocaine . . . ."  (Doc. 251, 61)  Having identified independent evidence of Ms.

---

[3] The trial transcript does not reflect the content of these calls; the court reconstructs their substance from the quotations offered by defendant in the motion to vacate.  (Doc. 296, 17)

Honaker's involvement in the conspiracy, the court is not persuaded of a reasonable probability that the outcome of the proceedings would have been different absent counsel's alleged error. *See Wenas v. U.S. Att'y Gen.*, 201 F. App'x 668, 670 (11th Cir. 2006) (requiring petitioner seeking to show prejudice to "demonstrate a 'reasonable probability that but for the attorney's error, the outcome of the proceedings would have been different'" (quoting *Dakane v. U.S. Att'y Gen.*, 399 F.3d 1269, 1274 (11th Cir. 2005))).  In consequence, denial of relief on this ground is required.

*Sentencing Claims*

Defendant argues in ground seven that counsel rendered ineffective assistance by failing to advise him of the benefits of entering a guilty plea.  (Doc. 296, 15-16)  Defendant submits that had he pleaded guilty, he would have received a reduction of two points in the base level offense for acceptance of responsibility, and raised the possibility of substantial assistance and a sentence below the guidelines range.  (Doc. 296, 16)  The prevailing sentencing provisions, however, do not allow defendant to show that he suffered prejudice by proceeding to trial.  Regardless of a plea, defendant would have faced a mandatory minimum term of life imprisonment.  In other words, defendant would have received no benefit under the sentencing guidelines for acceptance of responsibility, because the sentencing court was constrained to impose a sentence of life imprisonment.  (*See* PSR ¶¶ 225-26)

Furthermore, defendant cannot show "a reasonable probability that but for this [allegedly] deficient performance, the result of his trial would have been different." *See Carter*, 288 F. App'x at 650.  Defendant simply assumes that the sentencing court would have credited him for acceptance of responsibility as a matter of course.  But

defendant's claims that he would have received credit for acceptance of responsibility or that he would have admitted guilt and offered assistance to the government are largely speculative, especially in light of Mr. Johnson's continued protestations of innocence.

In grounds ten and twenty-four, defendant raises two additional sentencing-related arguments, maintaining that counsel should have objected to the two-level increase under the guidelines for use of a minor to further the criminal activity and did not properly argue against the drug weight for which defendant should be held accountable.  (Doc. 296, 20-21, 29)  As discussed above, defendant faced a statutory mandatory minimum of life imprisonment—no increase or decrease pursuant to the sentencing guidelines would have had any effect on the ultimate sentence.  Assuming *arguendo* counsel had made a persuasive argument against the two-level increase for use of a minor or the drug weight attributed to defendant in the presentence investigation report—both of which found support in the evidence—defendant's sentence would not have been materially different.  As a result, these grounds are unavailing.  *See Strickland*, 466 U.S. at 692 ("[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.").

*Pleading "the Fifth"*

In ground nine, defendant contends counsel rendered ineffective assistance by advising him not to testify.  (Doc. 296, 18)  Defendant contests the evidence as presented and offers various alternative explanations, clarifications, and qualifications he would have provided had he testified at his trial.  (Doc. 296, 18-20)  The law is clear that "[t]he reasonableness of counsel's actions may be determined or

substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691.  Notably, the proposed testimony in the § 2255 motion now under consideration does little to discredit the government's evidence or exonerate defendant, and, at various turns, implicates Mr. Johnson in the narcotics distribution conspiracy of which he claims he was not part.  Based on the arguments raised in the § 2255 motion, which focus in large part on tangential issues, the court observes a significant possibility that the addition of defendant's testimony, particularly when subjected to cross-examination, would not have redounded to the benefit of the accused.   Under such circumstances, defendant cannot "show that counsel's representation fell below an objective standard of reasonableness."  *See id.* at 688.

*Claims of Trial Error*

        In grounds eleven through fourteen, seventeen, twenty-one, and twenty-two, defendant recounts alleged errors counsel made in the context of trial that allegedly prejudiced his defense.  In ground eleven, for example, defendant argues that counsel rendered ineffective assistance by failing to subpoena Fefi Salter, the alleged owner of the red Jaguar seized from "the hole" and from which authorities recovered a short-barreled shotgun.  (Doc. 296, 21)  Defendant avers that Salter would have testified that she loaned the car to Frederick Johnson, defendant's brother, and that only Frederick had access to the vehicle and its contents.  But defendant's argument as to Salter's theoretical testimony is based solely on his own conjecture, which is generally not sufficient to garner relief on a claim of ineffective assistance of counsel. *See Chaney v. Sec'y, Fla. Dep't of Corr.*, No. 10–13039, 2011 WL 5555846, at *2 (11th Cir. Nov. 15, 2011) ("Ineffective assistance claims based on 'complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence

is a matter of trial strategy and because all allegations of what a witness would have testified are largely speculative.'" (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978))). "'Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision' that seldom, if ever, serves as grounds to find counsel's assistance ineffective." *Id.* (quoting *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004)).

Defendant alleges in ground twelve that counsel rendered ineffective assistance by failing to offer into evidence an automobile service estimate, which defendant asserts was prepared when Frederick Johnson took the Jaguar in for maintenance. (Doc. 296, 21-22)  Though such evidence may have connected Frederick with the seized vehicle, defendant does not articulate its significance in the greater context of the trial.  Put another way, defendant has not shown "a reasonable probability that but for this [allegedly] deficient performance, the result of his trial would have been different."  *See Carter*, 288 F. App'x at 650.

In ground thirteen, defendant contends that counsel performed deficiently by failing to highlight contradictions in the testimony of Deputy Weekley.  (Doc. 296, 22)  Defendant points specifically to testimony regarding the supplying source for the drug ring, asserting that Deputy Weekley stated on direct examination that Frederick Johnson would accompany defendant to purchase the cocaine.  Defendant complains that on cross-examination, however, Deputy Weekley testified that defendant had been obtaining the drugs *from* Frederick.  When viewing the evidence in its entirety, the court can identify no deficiency in counsel's performance.  By eliciting an alternative response from that offered during direct testimony, defense counsel seems to have achieved one of the objects of cross-examination and, to such an extent as

was possible, brought into question Deputy Weekley's credibility.  That the jury may have chosen to credit Deputy Weekley's testimony, anyway, does not establish error. Moreover, defendant does not show, given the considerable weight of the evidence marshaled against him, that any more strenuous attempt to highlight this particular testimonial inconsistency would have had an effect on the outcome of the verdict. Because defendant can demonstrate neither deficient performance nor prejudice, this claim of ineffective assistance must fail.  *See Strickland*, 466 U.S. at 687, 697 (requiring a defendant to satisfy both prongs of the familiar test).

Defendant argues in ground fourteen that counsel rendered ineffective assistance by failing to object to the admission in evidence of photographs of Ashley Honaker.  (Doc. 296, 22-23)  According to defendant, the photographs showed Ms. Honaker holding hundred-dollar bills and the name "Day-Day" tattooed on the left side of her chest.   Contrary to defendant's post-conviction submissions, the photographs meet the standard for relevant evidence, because they permit an inference of Ms. Honaker's involvement both with the drug trade and the defendant. With the exception of relevancy, defendant does not articulate any independent ground for the exclusion of the photographs, and thus identifies no deficiency in counsel's failure to enter an objection thereto.  Even were the court to be led down the path of error and question the relevancy of the photographs, defendant has failed to show that their admission prejudiced him in any legally meaningful way.  *See Strickland*, 466 U.S. at 687 (requiring defendant to demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable").

In ground seventeen, defendant alleges that counsel performed deficiently by failing to object to the admission in evidence of the short-barreled shotgun recovered from the seized Jaguar.  (Doc. 296, 24-25)  In advancing this ground, defendant also cites counsel's failure to introduce the results of a fingerprint examination conducted on the weapon, which, according to defendant, returned negative for his prints.  The court identifies at least two deficiencies in this line of argument:  (1) the record does not reflect the existence of any fingerprint examination and (2) defendant's sole reliance on the results of such a test, assuming it exists, ignores the substantial evidence tending to link Mr. Johnson to the red Jaguar from which the short-barreled shotgun was recovered.  The car was registered to the same address defendant listed as his residence and matched the vehicle seen in the video Alonzo Johnson (defendant's cousin) had taken.  (Doc. 257, 5)

More importantly, "the substantive crimes committed by a member of a conspiracy are attributable to other co-conspirators if the crimes are reasonably foreseeable as a necessary or natural consequence of the unlawful agreement." *United States v. Gualdado*, 794 F.2d 1533, 1535 (11th Cir. 1986); *see United States v. Alvarez*, 755 F.2d 830 (11th Cir. 1985) ("[E]ach member of a conspiracy is criminally liable for any crime committed by a coconspirator during the course and in furtherance of the conspiracy, unless the crime 'did not fall within the scope of the unlawful project, or was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement.'" (quoting *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946))). Even assuming the results of a fingerprint examination would have raised a question as to defendant's exclusive possession of the weapon, the government had multiple

legal bases on which to rely in charging defendant with possession of a firearm in furtherance of a drug trafficking offense.  Accordingly, defendant cannot show that the failure to offer the fingerprint results "so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman*, 477 U.S. at 374.

Defendant maintains in ground twenty-one that counsel rendered ineffective assistance by failing to offer into evidence the grand jury testimony of DEA agent Claude Cosey, who stated that defendant threatened Sharon Dixon by discharging a firearm in her vicinity over a dispute involving defendant's girlfriend.  Cosey's grand jury testimony, according to defendant, would have established that defendant did not discharge the weapon in furtherance of a drug trafficking offense. (Doc. 296, 27-28) Defendant goes on to claim that he "would have been acquitted of Count Two had trial counsel presented . . . Cosey's statements." (Doc. 296, 28)  As explained above, the decision to call witnesses is the "'epitome of a strategic decision' that seldom, if ever, serves as grounds to find counsel's assistance ineffective." *See Chaney*, 2011 WL 5555846, at *2 (quoting *Conklin*, 366 F.3d at 1204).  Moreover, the analysis made in conjunction with the presentation of ground seventeen dictates the same conclusion here that the government, by presenting evidence of defendant's involvement in a conspiracy, laid the proper evidentiary predicate for a conviction on Count II (possession of a firearm in furtherance of a drug trafficking offense).  Having failed to show that the putative error had any effect on the judgment, defendant has failed to carry his burden to demonstrate prejudice. *See Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not

warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

In ground twenty-two, defendant asserts that counsel performed deficiently by failing to effectively cross-examine Tabitha Dixon regarding the aforementioned shooting incident involving Sharon. (Doc. 296, 28) Defendant submits that "proper" questioning on this event would have exposed Tabitha's "motive to lie," but does not develop any discernable rationale to support this contention.  Unsupported by the evidence or specific citation to the trial transcript, this conclusory allegation of ineffective assistance is unavailing.  *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("'Conclusory allegations of ineffective assistance are insufficient.'" (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991))).

*Pretrial Interviews*

In ground nineteen, defendant lists five individuals he identifies as coconspirators and claims counsel rendered ineffective assistance because he failed to conduct pretrial interviews of these witnesses.  (Doc. 296, 25-26)  As detailed above, "no absolute duty exists to investigate particular facts or a certain line of defense."  *Chandler*, 218 F.3d at 1317.  "[C]ounsel's conducting or not conducting an investigation need only be reasonable to fall within the wide range of competent assistance."  *Id.* (citing *Strickland*, 466 U.S. at 691 (stating that counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary")).  Significantly, much of the argument defendant advances in connection with this ground has been considered in the analysis conducted thus far.  Even if counsel had pursued this pretrial investigation strategy, which defendant only now advocates, the court "'cannot conclude that there

is a reasonable probability that the result of the [proceeding] would have been different.'" *See Wilson*, 962 F.2d at 998 (quoting *Lawson*, 947 F.2d at 853). Having failed to show the requisite prejudice under *Strickland*, defendant cannot prevail on this claim of ineffective assistance of counsel. *See* 466 U.S. at 687.

*Prosecutorial Remarks*

Defendant contends in grounds sixteen and twenty-three that counsel performed deficiently by failing to object to prosecutorial comments offered during closing argument. More specifically, defendant takes issues with the prosecutor's assertion that Mr. Johnson, who was arrested in November 2005 and May 2006, had been carrying a total of more than 30 grams of cocaine and "thousands of dollars in cash" before his detentions. Defendant now responds that authorities recovered only 29.49 grams of cocaine and approximately $1,500 after making those arrests. (Doc. 296, 24) Additionally, defendant characterizes as "disparaging" and impermissible the "personal opinion" of the prosecutor, who referred on two occasions to the defense's theory of the case as a "smokescreen." (Doc. 296, 28-29)

"'To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant.'" *Muhammad v. McNeil*, 352 F. App'x 371, 375 (11th Cir. 2009) (quoting *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991)). "The reversal of a conviction or a sentence is warranted when improper comments by a prosecutor have 'so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process.'" *Parker v. Head*, 244 F.3d 831, 838 (11th Cir. 2001) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). The government concedes that the prosecution, in "rounding" the amounts

of drugs and money recovered, did not present the subject quantities to the nearest dollar and gram.  Yet the minor misstatements, to the extent they may be properly characterized as such, and when weighed against the quantum of evidence presented, did not fundamentally mislead the jury and were so slight as to be trivial in the context of the entire trial.  *See Muhammad*, 352 F. App'x at 375-76 (directing court to consider remarks "under the totality of the circumstances" and, *inter alia*, whether "'challenged remarks have a tendency to mislead the jury'" (quoting *Davis v. Zant*, 36 F.3d 1538, 1546 (11th Cir. 1994))).  Defendant, therefore, has failed to establish either that the misstatements prejudiced him or that counsel acted unreasonably in declining to raise an objection to the remarks in controversy.

Assuming *arguendo* that the "smokescreen" remarks were improper, they clearly did not constitute a denial of due process such as would require reversal of defendant's conviction.  *See Parker*, 244 F.3d at 838.  Prosecutorial misconduct constitutes a denial of due process when it "renders a trial fundamentally unfair" or when it raises a "'reasonable probability'" that, but for the misconduct, "'the outcome of the proceeding would have been different.'"  *See Muhammad*, 352 F. App'x at 375 (quoting *Eyster*, 948 F.2d at 1206-07).  Owing to the substantial competent proof offered to establish the guilt of the accused, the court finds no "'reasonable probability,' or 'a probability sufficient to undermine confidence in the outcome,' that, but for the improper remarks, 'the outcome of the proceeding would have been different.'"  *See id.* (quoting *Eyster*, 948 F.2d at 1206-07).  Consequently, counsel's failure to object, if in error, did not render the result of the proceeding unfair or unreliable.  *See Lockhart*, 506 U.S. at 369.

*Jury Instruction*

In ground twenty, defendant avers that counsel rendered ineffective assistance by failing to request a buyer-seller instruction to the jury.[4]  Defendant argues, correctly, that the buyer-seller relationship does not, by itself, establish the intent to agree required for a conspiracy. (Doc. 296, 26-27) But as the government maintains, the evidence adduced at trial showed that defendant acted in concert with a group of individuals whose main proprietary object was the sale and distribution of narcotics. To recount just some of the relevant proof, defendant explained to three drug agents following his May 2006 arrest how he worked with Sharon Dixon and Valentine Vasser, his suppliers, and his brother, Frederick, to buy and sell crack cocaine. (Doc. 251, 59; PSR ¶ 117)  During telephone calls made from the jailhouse, defendant counseled Ashley Honaker about obtaining powder cocaine from his suppliers, converting it to cocaine base, and selling the crack.  (Doc. 251, 54, 60-61)  The government, in other words, did not rely upon any single buyer-seller transaction to establish proof of the conspiracy.  In short, defense counsel had no legal or evidentiary basis on which to request a buyer-seller instruction.  Accordingly, defendant has not shown that counsel's performance in this regard fell beyond "the

---

[4] A buyer-seller instruction is one by which the court instructs the jury that a mere buyer-seller relationship does not by itself establish a conspiracy between buyer and seller.  *See United States v. Lively*, 803 F.2d 1124, 1125 (11th Cir. 1986).  Here, the trial court addressed the substance of a buyer-seller instruction when it instructed the jury:

> Now, of course, mere presence at the scene of a transaction or event or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests does not necessarily establish proof of a conspiracy.  Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.

(Doc. 252, 73)

wide range of [constitutionally] reasonable professional assistance." *See Strickland*, 466 U.S. at 689.

*Competency Hearing*

Defendant submits in ground eighteen that counsel performed deficiently by failing to move for a competency hearing, which, Mr. Johnson contends, was necessary to determine whether he was competent to assist counsel in his defense. (Doc. 296, 25)  Defendant maintains that he suffers from bipolar disorder and chronic depression, and was placed on "suicide watch" on multiple occasions while awaiting trial.  (Doc. 296, 25)  Even assuming defendant is afflicted with some mental deficiency, Mr. Johnson has not made any showing of mental impairment so severe as to significantly compromise his ability to assist counsel in preparing a defense.  As discussed above, "'[c]onclusory allegations of ineffective assistance are insufficient.'"  *Wilson*, 962 F.2d at 998 (quoting *Lawson*, 947 F.2d at 853).   At defendant's behest, counsel apparently considered the possibility of incompetency but ultimately (according to Mr. Johnson) informed defendant, "They'll know you're not crazy."  (Doc. 296, 25)   Notably, the presentence investigation report does not substantiate the claim of incompetency, which is belied by the degree of particularity found in the very motion now under consideration.  Having failed to make some more definite showing tending to explain or substantiate his inability to assist in the preparation of a defense, Mr. Johnson cannot demonstrate that counsel's determination to forego a competency hearing was professionally unreasonable.  *See Strickland*, 466 U.S. at 690 (recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment").

*Claims of Ineffective Appellate Assistance*

The court turns now to defendant's claims of ineffective appellate assistance. In ground twenty-six, defendant asserts that appellate counsel rendered ineffective assistance by failing to challenge the sufficiency of the evidence on appeal.  (Doc. 296, 30)  Although labeling the point differently, defendant only rehashes the same arguments raised in the first twenty-five grounds of the motion to vacate, relying on various alternative interpretations of incriminating evidence like the letter recovered from his brother, Frederick, the intercepted jailhouse telephone calls, and the video filmed by his cousin, Alonzo.  (Doc. 296, 30-31)  This court has given due consideration to these arguments in the foregoing analysis, but has found them generally unpersuasive.  Given the substantial evidence of guilt adduced at trial and acknowledged by the Eleventh Circuit on direct appellate review, defendant cannot demonstrate a reasonable probability that but for counsel's failure to challenge the sufficiency of the evidence, the result of his appeal would have been different.  *See Carter*, 288 F. App'x at 650.

Defendant contends in ground twenty-seven that appellate counsel performed deficiently by failing to raise his claims of ineffective assistance of trial counsel on direct appeal.  Under the prevailing legal standard, which appellate counsel explained to defendant, the appellate tribunal should not, as a general rule, review claims of ineffective assistance of counsel on direct appeal.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("The better-reasoned approach is to permit ineffective-assistance claims to be brought in the first instance in a timely motion in the district court under § 2255.")*; United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002) ("We will not generally consider claims of ineffective assistance of

counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record."). "When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." *Massaro*, 538 U.S. at 504-05.

Here, defendant did not raise an ineffective assistance claim in the trial court, nor was the factual record sufficiently developed to permit direct appellate review of such a claim. Appellate counsel thus acted reasonably and in accordance with clear judicial precedent in declining to raise the ineffective assistance of counsel claims on direct appeal. Moreover, as this analysis shows, the various ineffective assistance claims lack merit. Accordingly, no relief is available on this ground. *See Strickland*, 466 U.S. at 697 (allowing the reviewing court to dispose of an ineffective assistance claim if the defendant fails to show deficient performance or prejudice).

In ground twenty-eight, defendant complains that appellate counsel, Gwendolyn Spivey, rendered ineffective assistance by failing to confirm his address before sending legal mail. (Doc. 296, 32) Defendant claims that he received his mail late after he was transferred to and from different prison facilities, thus "eliminating opportunities to add supplemental issues to [his] writ of certiorari." (Doc. 296, 32) Ms. Spivey, who submitted a sworn affidavit (doc. 306-2) in conjunction with the government's response to the motion to vacate, explained that she urged defendant to apprise her of any change in address and that it was unusual for an inmate to be transferred so early in his incarceration. (Doc. 306-2, 8-9) Appellate counsel stated that her office typically "recheck[s] addresses as a matter of course before every letter

is sent," but that "this apparently did not happen" in connection with two letters addressed and mailed to Mr. Johnson.  (Doc. 306-2, 9)

Ms. Spivey, however, recalled that defendant, by letter dated September 13, 2007, indicated that he would defer to counsel's judgment regarding the potential filing of a petition for rehearing with the appellate court.  (Doc. 306-2, 9)  Following counsel's submission of a petition for writ of certiorari, defendant advised Ms. Spivey by letter of some perceived factual errors in the petition.  But appellate counsel averred that the facts in the certiorari petition reflected the facts in the record.  (Doc. 306-2, 9)  As a result, counsel asserted, she would not have changed the petition even if she had received defendant's corresponding letter in a timely manner.  (Doc. 306-2, 9-10)  Having reviewed the circumstances surrounding the mailings at issue, the court acknowledges that the addressing errors caused delays in communication.  Yet defendant does not specify what facts were submitted in error or what claims he sought to add, let alone how amendment would have affected the outcome of the certiorari petition review.  A credible showing of prejudice is markedly absent. Defendant cannot show a reasonable probability that but for the mailing errors, the result of the subject appellate proceedings would have been different.  *See Carter*, 288 F. App'x at 650.

*Miscellaneous Grounds*

In grounds twenty-nine through thirty-six, defendant does not allege ineffective assistance of counsel, but rather cites independent justifications that he believes warrant reversal of his convictions: (1) Special Agent Cosey rendered false testimony to the grand jury; (2) the government did not carry its burden to establish a common agreement; (3) the government committed "various acts of misconduct," such as

referring to Ashley Honaker as defendant's girlfriend; (4) the government, in seeking an enhanced sentence, relied on prior convictions that do not qualify as serious drug offenses under U.S. SENTENCING GUIDELINES MANUAL § 4B1.1; (5) the jury failed to make any specific finding as to the drug quantity attributed to defendant; (6) defendant was not provided an opportunity to plea after the government dismissed all charges relating to powder cocaine; (7) the application of enhanced penalties under 21 U.S.C. §§ 841 and 851, absent warning that state criminal convictions could be used to enhance a federal sentence, violated defendant's substantial rights; and (8) the lack of representation of African Americans, Hispanics, and young persons on the grand and petit juries violated defendant's constitutional right to a trial by jury of his peers. (Doc. 296, 32-37)  The substance of these assertions is either covered above, or is barred from further review.

"Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding." *Mills*, 36 F.3d at 1055.  "A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal." *McCoy*, 266 F.3d at 1258.  The claims advanced in grounds twenty-nine through thirty-six, which defendant could have, but did not, raise on direct appeal, are now procedurally barred. Defendant has not demonstrated cause or prejudice for his failure to assert these claims on direct appeal, making procedural default the appropriate result. *See Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004).  To the extent defendant challenged the prosecution's characterization of Ashley Honaker as his "girlfriend" on direct appeal, this claim is also procedurally barred because the appellate court has

already resolved it against Mr. Johnson. *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal."); *Mills*, 36 F.3d at 1055 ("[P]rior disposition of a ground of error on direct appeal, in most cases, precludes further review in a subsequent collateral proceeding.").

Pursuant to 28 U.S.C. § 2255(b), this court must conduct an evidentiary hearing upon defendant's motion to vacate sentence, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." In support of such motion, however, defendant must proffer credible and specific evidence entitling him to relief. *See Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."). Here, defendant's claims are procedurally defaulted, without merit, or otherwise refuted by the record. This court may therefore deny the requested relief without an evidentiary hearing. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is *not* entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.") (quotation marks omitted); *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983) ("An evidentiary hearing is not required where, as here, the district court can determine the merits of the ineffectiveness claim based on the existing record.").

Accordingly, it is respectfully RECOMMENDED:

That the motion to vacate, set aside, or correct sentence (doc. 296) pursuant to 28 U.S.C. § 2255 be DENIED.

At Pensacola, Florida, this 15th day of February, 2012.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).